## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| ROCHELLE MARIE MAYES | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MICHAEL REUTER, in his Individual | ) | |
| Capacity, | ) | |
| KATRINA LINGENFELTER, in her | ) | |
| Individual Capacity, | ) | |
| ASHLEY SCRIVNER, in her Individual | ) | |
| Capacity, and | ) | |
| THE STATE OF MISSOURI | ) | |
| | ) | |
| Defendants. | ) | |

### COMPLAINT

COMES NOW Plaintiff, Rochelle Marie Mayes ("Rochelle"), for her

Complaint against Defendants, Michael Reuter, Katrina Lingenfelter, Ashley

Scrivner and The State of Missouri, and states:

### JURY DEMAND

1.     Plaintiff demands trial by a jury on all claims.

### VENUE AND JURISDICTION

2.     Plaintiff, Rochelle Marie Mayes ("Rochelle"), resides in Jefferson

County, Missouri.

3.     Defendants, Michael Reuter ("Reuter"), Katrina Lingenfelter

("Lingenfelter") and Ashley Scrivner, reside in Jefferson County, Missouri.

Defendant, State of Missouri ("the State") is a state which is organized and

exists under the Constitution of the United States.

Mayes vs. Reuter, et al.

4.      Rochelle was previously employed as a Deputy Clerk of the Circuit Court for Jefferson County for seventeen years.  Reuter was elected Clerk of the Circuit Court for Jefferson County in the November 2014 election, and took office on Friday, January 2, 2015.  He has remained Clerk of the Circuit Court of Jefferson County since January 2, 2015.  Lingenfelter and Scrivner are Deputy Clerks of the Circuit Court of Jefferson County, Missouri.

5.      Rochelle was employed as a Deputy Clerk of the Circuit Court for about seventeen years.  Her employment was terminated by Reuter on about October 13, 2017, pursuant to a Notice of Intent to Terminate issued on about October 6, 2017.  A copy is attached as Exhibit F.

6.      The Complaint alleges that Rochelle was terminated, in violation of the First and Fourteenth Amendments to the United States Constitution in violation of her right to exercise political free speech because of her affiliation with the Democratic party, and because she supported Jeanette McKee, the Democratic candidate, in the November 2014 election for Clerk of the Circuit Court.  The Complaint also alleges that Rochelle was terminated because of racial discrimination, and in retaliation for complaints filed by her, during December 2016, with the United States Equal Employment Opportunity Commission, and during April 2017, with the Missouri Commission on Human Rights, and because she filed a grievance complaining of her removal as Judge Missey's courtroom clerk and prospective secretary to Judge Missey as the presiding Judge, during December 2016, along with related claims.  All these events occurred in Jefferson County, Missouri.

Mayes vs. Reuter, et al.

7.     Rochelle was an employee of the State of Missouri.  Deputy Clerks are employees of the State who are hired and fired (but only for just cause) by the elected Clerk of the Circuit Court.  RSMo 483.245.6, RSMo 483.080, and Missouri Supreme Court Operating Rule 7, which provides, at 7.B.11.4, "An employee may be dismissed only for just cause."  Missouri Deputy Clerks of the Circuit Court are not patronage employees and are not employees at will.

8.     This Court has venue under 28 U.S.C. § 1391(b)(1) and (2).

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 1983, et seq. and supplemental jurisdiction over the State law claims pursuant to 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

10.     Plaintiff, Rochelle, is a citizen of Missouri and a resident of Jefferson County, Missouri.

11.     Defendant, Reuter, is a citizen of Missouri and a resident of Jefferson County, Missouri.

12.     Defendant, Lingenfelter, is a citizen of Missouri and a resident of Jefferson County, Missouri.

13.     Defendant, Ashley Scrivner, is a citizen of Missouri and a resident of Jefferson County, Missouri.

14.     Defendant, State of Missouri ("the State"), is a State organized and existing under the Constitution of the United State.  Its capitol is located in Jefferson City, Missouri.

Mayes vs. Reuter, et al.

15.    At all times herein relevant, Rochelle, Reuter, Lingenfelter and Ashley Scrivner were employees of the State of Missouri and, from January 2, 2015 onward Reuter was the elected Clerk of the Circuit Court of Jefferson County, Missouri.

16.    Rochelle was the first African-American Clerk, or Deputy Clerk, of the Circuit Court of Jefferson County since Missouri became the twenty-fourth State in 1821.  Kyerra Johnson is the only other African-American who has been employed as a Deputy Clerk of the Circuit Court in Jefferson County.  Her employment began in January 2015.  She resigned in January 2016 to take a position at the Missouri office of State Court Administration in Jefferson City, Missouri.  With that exception, Rochelle is the only African-American ever employed as a Clerk or Deputy Clerk of the Circuit Court of Jefferson County, Missouri.

17.    Howard Wagner was the elected Clerk of the Circuit Court in Jefferson County for more than twenty-five years.  He was a Democrat.  He announced his retirement during 2014, stating that he would not run for re-election in the November 2014 election.

18.    Rochelle is a life-long Democrat.  Along with Susan Hickman, Sharon Rebecca Hickman, Laurie Laiben and Tracy VanMetre, she supported Jeanette McKee as the Democratic candidate for Clerk of the Circuit Court during the November 2014 election.  Jeanette McKee ran as the Democratic candidate.  Rochelle, Susan Hickman, Sharon Rebecca Hickman, Laura Laiben

Mayes vs. Reuter, et al.

and Tracy VanMetre, all Democrats, were among the most avid and visible supporters of Jeanette McKee in that election.

19.     From about January 2015 to the current date there were about fifty-three Deputy Clerks of the Circuit Court in Jefferson County, Missouri.

20.     Jeanette McKee was employed as a Deputy Clerk for more than twenty-five years.  She was the most knowledgeable and experienced Deputy Clerk in the office when Reuter took office on January 2, 2015.

21.     Susan Hickman had more than twenty-five years of experience as a Deputy Clerk when Reuter took office on January 2, 2015.  Sharon Rebecca Hickman had more than four and one-half years of experience and Tracy VanMetre and Laurie Laiben were also experienced Deputy Clerks when Reuter took office on January 2, 2015.

22.     Christy Scrivner had never been in a courthouse, had no experience as a Deputy Clerk and was not qualified to be more than an Entry Level I Clerk on January 2, 2015.  She had supported Reuter in the November 2014 election.

23.     On Friday, January 2, 2015 Reuter informed Jeanette McKee that she would remain Chief Deputy Clerk, an informal title.  She shared a semi-private office with Susan Hickman, a supervisor, Level IV Deputy Clerk. Jeanette McKee was two levels above Level V.  No other Deputy Clerk in Jefferson County, including the supervisors, was above Level V.

24.     On Monday, January 5, 2015 Reuter announced that Jeanette McKee was no longer Chief Deputy Clerk and that Christy Scrivner was now

Mayes vs. Reuter, et al.

the Chief Deputy Clerk.  Reuter excluded Jeanette McKee from the meeting of

all Deputy Clerks and the subsequent meeting of all supervisors on Monday,

January 5, 2015, ordering her to answer the telephone and handle the public

window.  There was a closed sign on the window at that time.

25.    On about January 8, 2015, Reuter issued a Notice of Corrective

Action (disciplinary action) against Jeanette McKee, which had been initiated

by Christy Scrivner, resulting in an investigation by an attorney appointed by

Reuter.  The attorney had an attorney-client relationship with Reuter's wife and

had contributed to the political campaigns of Reuter and his wife.  Reuter's wife

is an elected member of the Jefferson County Council.  She and Reuter are

Republicans.

26.    The attorney appointed as an "independent" factfinder by Reuter

concluded that the Corrective Action against Jeanette McKee should be

withdrawn.

27.    Reuter then withdrew the Notice of Corrective Action, but not

before he had banned Jeanette McKee to the windowless microfilm room as the

permanent microfilm clerk, a position which did not previously exist, and

which no longer existed after Jeanette's tenure there.  Jeanette spent several

weeks as the full-time microfilm clerk, working in a windowless room with little

human contact.

28.    Reuter issued a Notice of Intent to Terminate Jeanette McKee, then

terminated her employment as Deputy Clerk.  Jeanette McKee appealed to the

Mayes vs. Reuter, et al.

presiding Judge who referred the matter to the Circuit Court Budget Committee, which appointed a panel of three Judges, from other counties.

29.     After hearing evidence, the three-Judge panel reinstated the employment of Jeanette McKee, with backpay.

30.     Reuter then assigned Jeanette McKee to Level I traffic department duties with instructions that she was not to come onto the second floor, where the main Clerk's office is located.

31.     At that point Jeanette McKee resigned under duress and took a position as Deputy Clerk of the Circuit Court for the United States Court of Appeals for the Eighth Circuit in St. Louis, Missouri.

32.     Susan Hickman ("Susan") was intimidated by Reuter.  She observed Reuter demanding Jeanette McKee's keys and parking pass in front of the other Clerks and transferring Jeanette McKee from her semi-private office to a cubicle outside Reuter's office on his first day in office.  Reuter also transferred Susan from the support division, where she was a supervisor, to the criminal division, where she was still a supervisor, Level IV Deputy Clerk, but with no one to supervise.

33.     Shortly after January 2, 2015 Christy Scrivner became angry with Susan because Susan was unable to teach her how to perform Jeanette McKee's old unofficial job as Chief Deputy Clerk.

34.     During one incident Christy Scrivner locked the door to Jeanette's old office (Christy Scrivner's new office), stuck her finger in Susan's face and told her that Jeanette McKee was not willing to help her (Christy Scrivner), that

Mayes vs. Reuter, et al.

it was an ugly campaign, an ugly election and that Susan would be helping her (Christy Scrivner) learn her new position.

35.     After Reuter became Clerk, Susan, a Supervisor, because a floater. Her duties and positions changed constantly.  Most of her duties were make-work, and were constantly changing.

35.     On one occasion, while was reading a newspaper article about Jeanette McKee's husband, Christy Scrivner stated that "she would just as soon kick ass and take names later."

36.     On another occasion, while Susan and other Deputy Clerks were reviewing a bulletin board statement about retirement benefits, Reuter kept staring at Susan's crotch area.  Susan asked if there was something wrong. Reuter kept staring.  Finally, Susan asked why he was staring at her in this manner, and Reuter responded, "Cause, I can".  Susan responded, "No, you cannot".

37.     Susan visited her doctor twice and a counselor on two or more occasions because of the work-related stress that resulted from the working conditions imposed by Reuter after January 2, 2015.

38.     Susan took early retirement on June 1, 2015, because she felt there was no other way out.  She did not want to be fired.  She felt like she was being forced out and took early retirement to avoid being fired.  She lost wages, plus a one-time lump sum retirement benefit of about $110,000.00.  She is also now required to pay more for her insurance coverage.

Mayes vs. Reuter, et al.

39.     Jeanette McKee's most visible supporters during the 2014 election campaign were Deputy Clerks Laurie Laiben, Susan Hickman, Sharon Rebecca Hickman, Tracy VanMetre and Rochelle.  All five, in addition to Jeanette, are no longer employed at the Clerk's office.

40.     Sharon Rebecca Hickman ("Beckie") was working as a Deputy Clerk under the supervision of Michael Bone for four and one-half years before Reuter took office on January 2, 2015.  Beckie had no disciplinary reports or negative writeups before Reuter took office.

41.     After taking office Reuter transferred Beckie to the traffic division, under the direction of Theresa Cusick.  She was not provided with an opportunity for training, like the other Clerks.  She was not allowed to sit with the other Clerks.  Theresa Cusick berated Beckie stating: "Do you have to stand so close to me?", "Do you have to be in my area?", stating that Becky was "probably going to lose [her] job", that Beckie was "stupid" and that she didn't "qualify".

42.     Reuter then terminated the employment of Beckie by issuing a Notice of Intent to Terminate during October 2015.  Beckie appealed to the presiding Judge who referred the matter to the Circuit Court Budget Committee, which appointed a panel of three Circuit Court Judges from other counties to hear the appeal.  Testimony was taken on two separate days, after which the three-Judge panel ruled in favor of Beckie and reinstated her with backpay.

Mayes vs. Reuter, et al.

43.     Beckie was terminated on October 13, 2015.  Her employment was reinstated with backpay during April 2016.

44.     Beckie told Reuter that Theresa Cusick was mistreating her, and requested a transfer to another department.  She informed Reuter that Theresa had stated that Beckie had a mental handicap and that she would never learn the position.  Reuter took no action on the requests for a transfer.

45.     The traffic department was a hostile work environment for Beckie. Theresa Cusick was very negative.  Beckie had to keep her office phone on do not disturb after she was first told to answer the phone, then not to answer the phone.  She was told to go to the window, where the public is served, then not to go to the window.  No one else in the traffic department was required to work under the same conditions.

46.     Beckie had carpal tunnel surgery on her right wrist during March 2016, before she was reinstated.  She had carpal tunnel surgery on her left wrist, on April 22, 2016, shortly after she returned to work following reinstatement by the three-Judge panel.

47.     Beckie asked Reuter to be placed on light duties because of her carpal tunnel surgery and the pain medication she was taking.  Reuter did not respond to Beckie's request to be placed on light duty.

48.     Beckie suffered a nervous breakdown and received temporary treatment from a psychiatrist because of the stress that resulted from her working conditions.  She took a medical leave of absence.

Mayes vs. Reuter, et al.

49.     After her medical leave time expired, Beckie asked to continue with her leave of absence, without pay.  The Jefferson County Judges, *en banc*, agreed that Beckie could remain an employee with unpaid time off if she would send a letter requesting continuation of her medical leave of absence.

50.     After Beckie was assured that the leave of absence would be grated if she requested it in writing, she sent a letter by facsimile, asking to continue her medical leave, but without pay.  This letter was timely faxed to the Clerk's office.

51.     Christy Scrivner received the fax letter, but refused to acknowledge that the letter was properly dated, even though it bore the received date for the facsimile transmission.  Christy Scrivner then informed Beckie that she would be terminated if she did not return to work on October 6, 2016.

52.     Beckie was under the care of a psychiatrist at that time.  She then submitted her resignation, under duress.

53.     After the three-Judge panel reinstated the employment of Beckie, Reuter filed a lawsuit in Cole County, Missouri against Beckie and against the Circuit Court Budget Committee, seeking to reverse the decision of the three-Judge panel.  That lawsuit is still pending, even though more than fourteen months have passed since Beckie resigned under duress.

54.     Reuter also issued a Notice of Corrective Action against Tracy VanMetre.  A three-Judge panel also reversed that decision.  Tracy VanMetre subsequently resigned.

Mayes vs. Reuter, et al.

55.     Reuter engaged in the systematic removal of Jeanette McKee, and the Democratic Deputy Clerks who most actively supported her in the November 2014 election, by terminating and/or constructively terminating the employment of Jeanette McKee, Sharon "Beckie" Hickman, Susan Hickman, Tracy VanMetre, Laurie Laiben and Rochelle.

56.     Rochelle was first employed as a Deputy Clerk during 2000.  By 2006 she was a Level II Deputy Clerk.

57.     During, about 2007, Rochelle was promoted to a Level III Deputy Clerk and assigned as a Courtroom Clerk to Associate Circuit Judge Darrell E. Missey.  At all times relevant Rochelle was qualified to be a Level III Deputy Clerk, to be a Courtroom Clerk and to be a Deputy Clerk.

58.     Rochelle remained as Judge Missey's Courtroom Clerk for almost ten years, staying with him after he became a Circuit Court Judge during, about, 2013.

59.     Rochelle had a very good relationship with Judge Missey during the approximately ten years she was his Courtroom Clerk, until about September 2016, when Judge Missey was elected as Presiding Judge.

60.     Prior to the November 2014 election Judge Missey, a Republican, was in the minority among the approximately twelve Judges in Jefferson County.  Judge Missey was either the sole Republican Judge, or one of two Republican Judges on the Jefferson County bench prior to the November 2014 election.  There were about ten or eleven Democratic Judges.

Mayes vs. Reuter, et al.

61.     After the November 2014 election, the Republican Judges were in the majority on the Jefferson County bench.  Beginning on about January 2, 2015 there were approximately nine Republican Judges and three Democratic Judges, and the Clerk's office also changed from a Democratic Clerk of the Circuit Court to Reuter, a Republican.

62.     It was the tradition in Jefferson County for the Courtroom Clerk for a Circuit Judge to become Secretary to the Presiding Judge while continuing as the Courtroom Clerk for the same Judge, once he/she was elected by the other Judges as the presiding Judge.

63.     The Secretary to the Presiding Judge also would receive a pay increase of $200.00 per month for handling the additional duties of Secretary to the Presiding Judge.

64.     Upon his election as Presiding Judge, Judge Missey began to make remarks to Rochelle that she should consider retirement or go on disability. Rochelle suffers from Osteoarthritis in both knees, and has gained weight since she first began to work for Judge Missey, but that did not prevent her from performing her job duties efficiently and competently.

65.     On about November 29, 2016, Rochelle's Supervisor telephoned her stating that Judge Elect Katherine Hardy-Senkel would like to meet with Rochelle, who was at work, but sick, suffering from diarrhea.  Under those circumstances Rochelle requested that she not meet with Judge Elect Katherine Hardy-Senkel on that date.

Mayes vs. Reuter, et al.

66.     The following day, approximately November 30, 2016, Judge Missey called Rochelle into his office, stating that he was very upset because he had received a call from Judge Elect Katherine Hardy-Senkel who told him that Rochelle did not want to meet her.  Judge Missey was furious.  He was red in the face and was speaking very loudly, cutting Rochelle off when she attempted to explain the reason she felt she had been unable to meet with Judge Elect Katherine Hardy-Senkel the previous day.

67.     Prior to November 29, 2016 Judge Missey had stated that he possibly would be moving Rochelle to be the Courtroom Clerk for Judge Elect Katherine Hardy-Senkel.  This would have meant that Rochelle would not become the Presiding Judge's Secretary and would not receive the $200.00 per month raise that would have begun on January 1, 2017, when Judge Missey would become the Presiding Judge.

68.     During the meeting with Judge Missey on about November 30, 2016, Rochelle responded that she believed Judge Missey was replacing her as his Courtroom Clerk, and therefore as Secretary to the Presiding Judge, because she is black. She did not raise her voice above normal speaking levels. Rochelle is African-American.

69.     On about December 1, 2016, Reuter, Rochelle's Supervisor, Mike Bone, and Reuter's attorney came to Rochelle's office and handed her a document, signed by Judge Missey, stating that Rochelle had been removed as Courtroom Clerk of Division 2, Judge Missey's Division.  Reuter stated that Rochelle would remain as a Level III Clerk and that his office would work to

Mayes vs. Reuter, et al.

find a new position for her as a Courtroom Clerk.  Reuter also stated that Rochelle could file a grievance about her removal as Judge Missey's Courtroom Clerk.

70.    On about December 7, 2016, Rochelle filed a grievance complaining about her removal as Courtroom Clerk and the loss of the opportunity to become Secretary to the Presiding Judge.

71.    On about December 15, 2016, Reuter called Rochelle into his office and handed Rochelle his written response to her grievance, stating that under State Law Judge Missey was permitted to select his Courtroom Clerk and that therefore the grievance was denied.

72.    After December 1, 2016 Rochelle was reassigned to the juvenile division, among the pool of Deputy Clerks, but not as a Courtroom Clerk.

73.    On or about December 15, 2016, Reuter also demoted Rochelle from a Level III Clerk to a Level II Clerk, decreasing her pay by about $100.00 per month, stating that she could not qualify as a Level III Clerk as long as she was not a Courtroom Clerk.  That was not true.  At that time Jefferson County had twelve Judges and was authorized to have twelve Level III Deputy Clerks, but there was no requirement to limit the Level III Clerks to Courtroom Clerks.

74.    After November 30, 2016 Judge Missey appointed Katrina Lingenfelter ("Lingenfelter") as his Courtroom Clerk and as the Secretary to the Presiding Judge (he officially took office as Presiding Judge on January 1, 2017).

Mayes vs. Reuter, et al.

75.   Rochelle helped train Lingenfelter, who had at least seven years less experience in the Clerk's office than Rochelle.

76.   Rochelle and Lingenfelter had a friendly relationship until Judge Missey appointed Lingenfelter as his Courtroom Clerk and Secretary to the Presiding Judge.

77.   Lingenfelter is Caucasian, slim, blonde and younger than Rochelle, but is not as efficient, experienced or competent as Rochelle.

78.   On about December 26, 2016, Rochelle filed a Complaint with the Equal Employment Opportunity Commission.  A copy, in three pages, is attached as Exhibit A.

79.   On about April 25, 2017, Rochelle filed a Complaint with the Missouri Commission on Human Rights, in two pages.  A copy is attached as Exhibit B.

80.   On about September 29, 2017 the United States Equal Employment Opportunity Commission issued a right to sue letter.  A copy, in one page, is attached as Exhibit C.

81.   On November 20, 2017 the Missouri Commission on Human Rights issued a right to sue letter, in two pages.  A copy is attached as Exhibit D.

82.   Between December 13, 2016 and October 6, 2017 Rochelle continued to work in the juvenile division, working in the pool of Deputy Clerks, not as a Courtroom Clerk.  During that period, a number of positions opened up for Courtroom Clerks and for backup Courtroom Clerks.  On each

Mayes vs. Reuter, et al.

occasion neither Reuter nor any of the Judges even considered Rochelle for appointment as a Courtroom Clerk or backup Courtroom Clerk.  Instead, less experienced Deputy Clerks were appointed to those positions.  Rochelle continued to work hard at the tasks that were assigned to her, and continued to receive good evaluation reports from her Supervisor, Mike Bone.

83.     Between December 13, 2016 and October 6, 2017 Rochelle was, for the most part, ignored by Reuter, the Judges and other Deputy Clerks.  She was treated as a pariah.  Other Deputy Clerks would speak to Deputy Clerks in the same area as Rochelle (in the pool of Deputy Clerks) but would not address her, for the most part.  Shew as given the "silent" treatment.  Nevertheless, Rochelle continued to work hard, to work competently and efficiently.

84.     On about August 25, 2017 Lingenfelter submitted a report to Christy Scrivner, as Chief Deputy Clerk, stating falsely that as she was coming back from lunch Rochelle was standing at the elevator and that as Lingenfelter passed her, Rochelle called her a "bitch".  Those statements and that report are false.

85.     On or about September 6, 2017, Lingenfelter submitted a report to Reuter falsely claiming that Rochelle hit her with her lunchbox in the back Lingenfelter's knee and then elbowed her in the back as Rochelle was leaving the aisle of Deputy Clerks in the probate area, claiming that Rochelle was creating a hostile work environment for Lingenfelter.  Those statements and that report are false.

Mayes vs. Reuter, et al.

86.     On about October 3, 2017, Lingenfelter submitted a report to Reuter and Christy Scrivner stating, falsely, that while she was assisting a citizen at the bookkeeping window, Rochelle walked past the Clerk's office and called her a "bitch".  Those statements and that report are false.

87.     Rochelle did not call Lingenfelter a "bitch" and did not strike her or elbow her.  Rochelle's lunchbox is actually a soft bag, not a metal box.  Rochelle did not knowingly contact Lingenfelter with her soft lunch bag, or with any part of Rochelle's body.

88.     During August or September 2017, on one occasion, Lingenfelter did make a gesture toward Rochelle, "giving Rochelle the finger".  Rochelle submitted a report to her Supervisor, so stating.  A copy is attached as Exhibit E.

89.     After November 30, 2016 Defendant, Ashley Scrivner submitted a false report to Reuter stating, falsely, that Rochelle used the "F_ _ _" word and was yelling during the meeting between Rochelle and Judge Missey on about November 30, 2016.  Ashley Scrivner was not present in that meeting, but claimed to be nearby, in an adjoining room.  Judge Missey raised his voice in that meeting, but Rochelle did not.

90.     Ashley, Lingenfelter and Reuter were acting in concert to establish a pretext for the termination of Rochelle's employment and for the other adverse employment actions taken against her.

91.     As of November 30, 2016, as a Level III Clerk, Rochelle was receiving annual gross wages of about $29,965.00 per year.

Mayes vs. Reuter, et al.

92.   As of October 1, 2017, as a Level II Clerk, Rochelle was receiving about $28,990.00 per year, gross income, a reduction of $975.00 per year. She also lost the $200.00 per month that is paid the secretary of the Presiding Judge.

93.   Rochelle is fifty-seven years old. Her date of birth is June 18, 1960.

94.   On October 6, 2017, Reuter issued his Notice of Intent to Terminate the employment of Rochelle because of "recent actions taken by you toward other co-workers as well as your Supervisor". A copy of the Notice of Intent to Terminate is attached as Exhibit F.

95.   Rochelle prepared a response to the Notice of Intent to Terminate, dated October 10, 2017, but, inadvertently, did not mail it until about October 20, 2017. A copy is attached as Exhibit G.

96.   On October 16, 2017, Reuter issued his Final Letter of Termination confirming that Rochelle's employment was terminated effective at the close of business on October 13, 2017, while also stating, "You may appeal this decision in writing to the Presiding Judge within ten days of the receipt of this notice". A copy is attached as Exhibit H.

97.   On October 25, 2017, Rochelle wrote to Presiding Judge Missey, appealing from the Final Letter of Termination. A copy is attached, in two pages, as Exhibit I.

Mayes vs. Reuter, et al.

98.     On October 24, 2017, Reuter issued a letter to Rochelle responding to her letter requesting a pre-termination hearing, stating that it was too late. A copy is attached as Exhibit J.

99.     On November 3, 2017, Presiding Judge Missey wrote Rochelle denying her appeal on the grounds that she had not submitted a written request for a hearing prior to October 13, 2017.  A copy is attached as Exhibit K.

100.   On November 7, 2017, Rochelle's attorney wrote the Circuit Court Budget Committee, requesting a hearing on the merits, arguing that Reuter had waived any right to rely on the provision of Court Operating Rule 7, which required a written request for a hearing before the termination date, by stating, in his October 16, 2017 letter, "You may appeal this decision in writing to the Presiding Judge within ten days of the receipt of this notice."  A copy of this letter, in four pages (minus the attachments), is attached hereto as Exhibit L.

101.   On December 5, 2017, the Circuit Court Budget Committee voted not to take any further action on Rochelle's termination, stating, "No further administrative remedies are available to Ms. Mayes."  A copy of that letter is attached hereto as Exhibit M.

## COUNT I

### (AGAINST DEFENDANTS, REUTER, LINGENFELTER AND SCRIVNER, FOR POLITICAL DISCRIMINATION, IN VIOLATION OF 42 U.S.C. § 1983, et seq. AND THE FOURTEENTH AND FIRST AMENDMENTS TO THE UNITED STATES CONSTITUTION)

102.   Plaintiff realleges and incorporates herein by reference ¶¶ 1-101, as fully set forth above.

Mayes vs. Reuter, et al.

103.   Defendants, Reuter, Lingenfelter and Scrivner, acting in concert, discriminated against Rochelle on the basis of her political affiliation, as a Democrat, and because she supported Jeanette McKee, as a Democrat, in the November 2014 election for Clerk of the Circuit Court of Jefferson County, Missouri.  The adverse employment actions of demotion, failure to promote and termination described above were taken against Rochelle because of her political affiliation, as a Democrat, and because she supported Jeanette McKee, as a Democrat, in the November 2014 election.

104.   Reuter ran as the Republican candidate in that election, and won the election.

105.   Rochelle was within a protected class in that un-elected, non-policy making, Deputy Clerks of the Circuit Court may not be discriminated against on the basis of their political affiliation.  The political discrimination against Rochelle, because of her affiliation with the Democratic party and because of her support for Jeanette McKee in the November 2014 election was a substantial or motivating factor for the adverse employment actions, described herein, that were taken against her.

106.   Rochelle is entitled to recover her attorney's fees under 42 U.S.C. § 1988, in a sum in excess of $100,000.00.

107.   At all times herein relevant, Reuter, Lingenfelter and Ashley Scrivner were acting under the color of state law, and were acting in concert. They violated the rights, privileges and immunities granted to Rochelle by the First and Fourteenth Amendments to the United States Constitution by

Mayes vs. Reuter, et al.

demoting her, by using false statements as a pretext, denying her reappointment to a Courtroom Clerk, denying reinstatement to a Level III Clerk, and by filing false charges against her and then terminating her employment, in violation of 42 U.S.C. § 1983, causing Rochelle to suffer the following damages:

(a)     Lost retirement benefits in a sum in excess of $200,000.00;

(b)     Lost wages resulting from reduced wages from December 1, 2016 through October 13, 2017 in a sum in excess of $1,000.00;

(c)     Lost wages after October 13, 2017 in a sum in excess of $500,000.00;

(d)     Mental and emotional distress in a sum in excess of $300,000.00.

108.   The conduct of Defendants, Reuter, Lingenfelter and Ashley, was intentional, malicious, unjustified and outrageous, with evil intent or motive, and with reckless or callous indifference for Rochelle's federally protected rights, warranting an award of punitive damages against Michael Reuter in a sum in excess of $300,000.00, against Katrina Lingenfelter in a sum in excess of $300,000.00, and against Ashley Scrivner in a sum in excess of $300,000.00.

## COUNT II

### (AGAINST DEFENDANTS, REUTER, LINGENFELTER AND SCRIVNER, FOR RETALIATION FOR POLITICAL AFFILIATION AND ACTIVITY, IN VIOLATION OF 42 U.S.C. § 1983 et seq. AND THE FOURTEENTH AND FIRST AMENDMENTS TO THE UNITED STATES CONSTITUTION)

109.   Plaintiff realleges and incorporates herein by reference ¶¶ 1-101 and 105, as fully set forth above.

Mayes vs. Reuter, et al.

110.   Defendants, Reuter, Lingenfelter and Ashley Scrivner, retaliated against Rochelle because she supported Jeanette McKee, the Democratic candidate, in the November 2014 election, and because both McKee and Rochelle are affiliated with the Democratic party, while acting in concert, by demoting Rochelle from a Level III to a Level II Clerk in December 2016, by refusing to reinstate her as a Courtroom Clerk and by refusing to reinstate her as a Level III Clerk, and by then, using false claims as a pretext, terminating her employment as a Deputy Clerk.  The adverse employment actions of demotion, failure to promote and termination were taken against Rochelle, in retaliation, because of her affiliation with the Democratic party and because she supported Jeanette McKee, as a Democrat, in the November 2014 election.

111.   At all times herein relevant, Reuter, Lingenfelter and Ashley Scrivner were acting under the color of state law, and were acting in concert. They violated the rights, privileges and immunities granted to Rochelle by the First and Fourteenth Amendments to the United States Constitution by demoting her, by using false statements as a pretext, denying her reappointment to a Courtroom Clerk, denying reinstatement to a Level III Clerk, and by filing false charges against her and then terminating her employment, as retaliation for her support of Jeanette McKee, as the Democratic candidate, in the November 2014 election, and because of her affiliation with the Democratic party, in violation of 42 U.S.C. § 1983, causing Rochelle to suffer the following damages:

(a)   Lost retirement benefits in a sum in excess of $200,000.00;

Mayes vs. Reuter, et al.

(b)    Lost wages resulting from reduced wages from December 1, 2016 through October 13, 2017 in a sum in excess of $1,000.00;

(c)    Lost wages after October 13, 2017 in a sum in excess of $500,000.00;

(d)    Mental and emotional distress in a sum in excess of $300,000.00.

112.   Rochelle is entitled to recover her attorney's fees under 42 U.S.C. § 1988, in a sum in excess of $100,000.00.

113.   The conduct of Defendants, Reuter, Lingenfelter and Ashley, was intentional, malicious, unjustified and outrageous, with evil intent or motive, and with reckless or callous indifference for Rochelle's federally protected rights, warranting an award of punitive damages against Michael Reuter in a sum in excess of $300,000.00, against Katrina Lingenfelter in a sum in excess of $300,000.00, and against Ashley Scrivner in a sum in excess of $300,000.00.

114.   Rochelle is entitled to recover her attorney's fees under 42 U.S.C. § 1988, in a sum in excess of $100,000.00.

## COUNT III

### (AGAINST DEFENDANTS, REUTER, LINGENFELTER AND SCRIVNER, FOR DENYING PLAINTIFF EQUAL PROTECTION OF THE LAW ON THE BASIS OF HER RACE IN VIOLATION OF 42 U.S.C. § 1983 et. Seq. AND THE FOURTEENTH AND FIFTH AMENDMENTS TO THE UNITED STATES CONSTITUTION)

115.   Plaintiff realleges and incorporates herein by reference ¶¶ 1-101 and 105, as fully set forth above.

Mayes vs. Reuter, et al.

116.   Defendants, Reuter, Lingenfelter and Ashley Scrivner, acting in concert, discriminated against Rochelle on the basis of her race, as an African-American, by demoting her from a Level III to a Level II Deputy Clerk, by refusing to promote her back to a Level III, by failing to reappoint her as a Courtroom Clerk, by filing false, pretextual statements against her for the purpose of terminating her employment and by then terminating her employment as a Deputy Clerk.

117.   Rochelle was within a protected class in that African-Americans may not be discriminated against on the basis of their race.  Rochelle was denied equal protection of law as provided by the Fifth and Fourteenth Amendments to the United States Constitution, because of her race as an African-American.

118.   Rochelle's race, as an African-American, was a substantial factor to the adverse employment actions taken against her.

119.   Rochelle is entitled to recover her attorney's fees under 42 U.S.C. § 1988, in a sum in excess of $100,000.00.

120.   At all times herein relevant, Reuter, Lingenfelter and Ashley were acting under the color of State law, and were acting in concert.  They violated the rights, privileges and immunities granted to Rochelle by the Fifth and Fourteen Amendments to the United States Constitution by denying Rochelle equal protection of the law, by demoting her, by failing to re-promote her, by failing to reappoint her as a Courtroom Clerk and by terminating her

Mayes vs. Reuter, et al.

employment because of her race, as an African-American, causing Rochelle to suffer the following damages:

(a)     Lost retirement benefits in a sum in excess of $200,000.00;

(b)     Lost wages resulting from reduced wages from December 1, 2016 through October 13, 2017 in a sum in excess of $1,000.00;

(c)     Lost wages after October 13, 2017 in a sum in excess of $500,000.00;

(d)     Mental and emotional distress in a sum in excess of $300,000.00.

121.    The conduct of Defendants, Reuter, Lingenfelter and Ashley, was intentional, malicious, unjustified and outrageous, with evil intent or motive, and with reckless or callous indifference for Rochelle's federally protected rights, warranting an award of punitive damages against Michael Reuter in a sum in excess of $300,000.00, against Katrina Lingenfelter in a sum in excess of $300,000.00, and against Ashley Scrivner in a sum in excess of $300,000.00.

## COUNT IV

### (AGAINST DEFENDANTS, REUTER, LINGENFELTER, SCRIVNER AND THE STATE OF MISSOURI, FOR VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT BY DISCRIMINATING AGAINST PLAINTIFF ON THE BASIS OF HER RACE)

122.    Plaintiff realleges and incorporates herein by reference ¶¶ 1-101, 105 and 116, as fully set forth above.

123.    All four Defendants, acting in concert, violated the Missouri Human Rights Act, RSMo. § 213.010 et. seq., including RSMo. § 213.055(1)(a), by taking adverse employment actions against Rochelle because of her race or

Mayes vs. Reuter, et al.

color.  Rochelle's race, as an African-American, was a contributing factor to the adverse employment actions taken against her.

124.  The defense of sovereign immunity does not apply to claims against the State of Missouri for violation of the Missouri Human Rights Act. RSMo. § 213.111.  Keeney vs. Missouri Highway and Transportation Commission, 70 S.W.3d 597, 600 (Mo. App. S.D. 2002); Bachtel vs. Miller County Nursing Home District, 110 S.W.3d 799, 804 (Mo. banc 2003).

125.  Defendants, Reuter, Lingenfelter, Ashley Scrivner and The State of Missouri, discriminated against Rochelle because of her race, as an African-American, by demoting her, by failing to re-promote her to a Level III Clerk, by failing to appoint her as a Courtroom Clerk, and by using false pretextual statements against her to provide grounds for terminating her, and by then terminating her employment as a Deputy Clerk, while acting in concert, thereby violating the Missouri Human Rights Act, RSMo. § 213.010 et. seq., causing her to sustain the following damages:

(a)  Lost retirement benefits in a sum in excess of $200,000.00;

(b)  Lost wages resulting from reduced wages from December 1, 2016 through October 13, 2017 in a sum in excess of $1,000.00;

(c)  Lost wages after October 13, 2017 in a sum in excess of $500,000.00;

(d)  Mental and emotional distress in a sum in excess of $300,000.00.

126.  Rochelle's race, as an African-American, was a contributing factor for the adverse employment actions taken against her.

Mayes vs. Reuter, et al.

127.   Rochelle is entitled to recover her attorney's fees under RSMo. § 213.111, in a sum in excess of $100,000.00.

128.   Rochelle is entitled to recover punitive damages against Defendants, Reuter, Lingenfelter, Ashley Scrivner and the State of Missouri, pursuant to RSMo. § 213.111.2, in that the conduct of each Defendant was intentional, malicious, unjustified and outrageous warranting an award of punitive damages against Michael Reuter in a sum in excess of $300,000.00, against Katrina Lingenfelter in a sum in excess of $300,000.00, against Ashley Scrivner in a sum in excess of $300,000.00 and against the State of Missouri in a sum in excess of $300,000.00.

## COUNT V

### (AGAINST DEFENDANTS, REUTER, LINGENFELTER, SCRIVNER AND THE STATE OF MISSOURI, FOR RETALIATION IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT

129.   Plaintiff realleges and incorporates herein by reference ¶¶ 1-101, 105, 116, 123 and 124, as fully set forth above.

130.   Defendants, Reuter, Lingenfelter, Ashley Scrivner and the State of Missouri, retaliated against Rochelle because she filed a grievance relating to her removal as the Courtroom Clerk for Judge Missey, because she filed a complaint with the Equal Employment Opportunity Commission and because she filed a complaint with the Missouri Human Rights Commission, while acting in concert, by creating a hostile work environment, treating her as a non-person, by failing to reappoint her as a Courtroom Clerk, by demoting her

Mayes vs. Reuter, et al.

from a Level III to a Level II Deputy Clerk and then refusing to re-promote her and by terminating her employment.

131.   These adverse employment actions were taken against Rochelle because she exercised her rights by filing the grievance, by filing the Complaint with the Equal Employment Opportunity Commission and by filing her complaint with the Missouri Human Rights Commission.

132.   The retaliation described above caused the adverse employment actions described above, which caused Rochelle to suffer the following damages:

(a)   Lost retirement benefits in a sum in excess of $200,000.00;

(b)   Lost wages resulting from reduced wages from December 1, 2016 through October 13, 2017 in a sum in excess of $1,000.00;

(c)   Lost wages after October 13, 2017 in a sum in excess of $500,000.00;

(d)   Mental and emotional distress in a sum in excess of $300,000.00.

133.   Rochelle is entitled to recover her attorney's fees under RSMo. § 213.111, in a sum in excess of $100,000.00.

134.   Rochelle is entitled to recover punitive damages against Defendants, Reuter, Lingenfelter, Ashley Scrivner and the State of Missouri, pursuant to RSMo. § 213.111.2, in that the conduct of each Defendant was intentional, malicious, unjustified and outrageous warranting an award of punitive damages against Michael Reuter in a sum in excess of $300,000.00, against Katrina Lingenfelter in a sum in excess of $300,000.00, against Ashley

Mayes vs. Reuter, et al.

Scrivner in a sum in excess of $300,000.00 and against the State of Missouri in a sum in excess of $300,000.00.

## COUNT VI

### (AGAINST DEFENDANTS, REUTER, LIGENFELTER, SCRIVNER AND THE STATE OF MISSOURI, FOR VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT, BY DISCRIMINATING AGAINST PLAINTIFF ON THE BASIS OF HER RACE BY IMPLIMENTING ADVERSE EMPLOYMENT ACTIONS)

135.    Plaintiff realleges and incorporates herein by reference ¶¶ 1-101, 105, 116, 117 and 118, as fully set forth above.

136.    Rochelle was qualified to perform the job of Deputy Clerk, Level III, including the job of Courtroom Clerk and was efficient and experienced in doing that work.

137.    Defendants, Reuter, Lingenfelter, Ashley Scrivner and The State of Missouri, treated other Deputy Clerks, who were not African-American, more favorably, by failing to take disciplinary action against Caucasian clerks who had engaged in conduct similar to the conduct Rochelle was falsely accused of doing, such as Lingenfelter, and by promoting, as Courtroom Clerks, Level III Clerks and backup Courtroom Clerks, Caucasian clerks who had less experience and who were less qualified than Rochelle.

138.    Defendants, Reuter, Lingenfelter, Ashley Scrivner and The State of Missouri, intentionally discriminated against Rochelle on the basis of her race in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, et. seq., causing Rochelle to suffer the following damages:

(a)    Lost retirement benefits in a sum in excess of $200,000.00;

Mayes vs. Reuter, et al.

(b)     Lost wages resulting from reduced wages from December 1, 2016 through October 13, 2017 in a sum in excess of $1,000.00;

(c)     Lost wages after October 13, 2017 in a sum in excess of $500,000.00;

(d)     Mental and emotional distress in a sum in excess of $300,000.00.

139.    Rochelle is entitled to recover her attorney's fees under 42 U.S.C. § 2000e-5(k), in a sum in excess of $100,000.00.

140.    The defense of sovereign immunity does not apply to claims against the State of Missouri for violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., including 2000e-5 and 42 U.S.C. § 1981.  Fitzpatrick vs. Bitzer, 427 U.S. 445, 456 (1976); Nevada Department of Human Resources vs. Hibbs, 538 U.S. 721, 726-28 (2003); Ussery vs. State of Louisiana, through the Department of Health and Hospitals, 962 F.Supp. 922, 927-29 (W.D. Louisiana 1997).

141.    Rochelle is entitled to recover punitive damages from Defendants, Reuter, Lingenfelter, Ashley Scrivner and The State of Missouri, pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, et. seq. and 2000e-5 because the conduct of these Defendants was intentional, malicious, unjustified and outrageous, with evil intent or motive, and with reckless or callous indifference for Rochelle's federally protected rights, warranting an award of punitive damages against Michael Reuter in a sum in excess of $300,000.00, against Katrina Lingenfelter in a sum in excess of $300,000.00, against Ashley Scrivner

Mayes vs. Reuter, et al.

in a sum in excess of $300,000.00 and against The State of Missouri in a sum in excess of $300,000.00.

## COUNT VII

### (AGAINST DEFENDANTS, REUTER, LIGENFELTER, SCRIVNER AND THE STATE OF MISSOURI, FOR RETALIATION AGAINST PLAINTIFF IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT)

142.   Plaintiff realleges and incorporates herein by reference ¶¶ 1-101, 105, 116, 117, 118, 131, 136 and 140, as fully set forth above.

143.   Defendants, Reuter, Lingenfelter, Ashley Scrivner and the State of Missouri, retaliated against Rochelle because she filed a grievance relating to her removal as the Courtroom Clerk for Judge Missey, because she filed a complaint with the Equal Employment Opportunity Commission and because she filed a complaint with the Missouri Human Rights Commission, while acting in concert, by creating a hostile work environment, treating her as a non-person, by failing to reappoint her as a Courtroom Clerk, by demoting her from a Level III to a Level II Deputy Clerk and then refusing to re-promote her and by terminating her employment.

144.   These adverse employment actions were taken against Rochelle because she exercised her rights by filing the grievance, by filing the Complaint with the Equal Employment Opportunity Commission and by filing her complaint with the Missouri Human Rights Commission.

145.   Defendants, Reuter, Lingenfelter, Ashley Scrivner and The State of Missouri, intentionally retaliated against Rochelle in violation of 42 U.S.C. §

Mayes vs. Reuter, et al.

1981 and 42 U.S.C. § 2000e, et. seq., causing Rochelle to suffer the following damages:

(a)     Lost retirement benefits in a sum in excess of $200,000.00;

(b)     Lost wages resulting from reduced wages from December 1, 2016 through October 13, 2017 in a sum in excess of $1,000.00;

(c)     Lost wages after October 13, 2017 in a sum in excess of $500,000.00;

(d)     Mental and emotional distress in a sum in excess of $300,000.00.

146.   Rochelle is entitled to recover her attorney's fees under 42 U.S.C. § 2000e-5(k), in a sum in excess of $100,000.00.

147.   Rochelle is entitled to recover punitive damages from Defendants, Reuter, Lingenfelter, Ashley Scrivner and The State of Missouri, pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 2000e, et. seq. and 2000e-5 because the conduct of these Defendants was intentional, malicious, unjustified and outrageous, with evil intent or motive, and with reckless or callous indifference for Rochelle's federally protected rights, warranting an award of punitive damages against Michael Reuter in a sum in excess of $300,000.00, against Katrina Lingenfelter in a sum in excess of $300,000.00, against Ashley Scrivner in a sum in excess of $300,000.00 and against The State of Missouri in a sum in excess of $300,000.00.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Rochelle Marie Mayes, prays for the following Judgment against Defendants:

Mayes vs. Reuter, et al.

(a)     Attorney's fees in a sum in excess of $100,000.00 against all four Defendants, jointly and severally;

(b)     An award for compensatory damages against all four Defendants, jointly and severally, in a sum in excess of $1,001,000.00;

(c)     An award of punitive damages against Michael Reuter in a sum in excess of $300,000.00;

(d)     An award of punitive damages against Katrina Lingenfelter in a sum in excess of $300,000.00;

(e)     An award of punitive damages against Ashley Scrivner in a sum in excess of $300,000.00;

(f)     An award of punitive damages against The State of Missouri in a sum in excess of $300,000.00;

(g)     Court costs against all four Defendants jointly and severally.


/s/ David M. Duree
David M. Duree, MBE 21003
David M. Duree & Associates, P.C.
312 South Lincoln Avenue
P.O. Box 1416
O'Fallon, IL 62269
Tel:   618-628-0186
Fax:   618-628-0259
Email:  law@dmduree.net

*Attorney for Plaintiff, Rochelle Marie Mayes*

Mayes vs. Reuter, et al.