UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROCHELLE MARIE MAYES,                  )
                                       )
            Plaintiff,                 )
                                       )
      vs.                              )          Case No. 4:17 CV 2905 CDP
                                       )
MICHAEL REUTER, et al.,                )
                                       )
            Defendants.                )

## MEMORANDUM AND ORDER

In November 2014, defendant Michael Reuter was elected Clerk of the Circuit

Court of Jefferson County, Missouri in a partisan election.  At the time of the

election, plaintiff Rochelle Marie Mayes was working at the court as a courtroom

clerk to Judge Darrell Missey.  Reuter ran as a Republican; Mayes had supported her

coworker and Reuter's Democratic competitor, Jeanette McKee, in McKee's failed

run for Clerk of Court.

Two years later, Mayes, who is African-American, was replaced as courtroom

clerk for Judge Missey by a Caucasian woman.  Mayes alleges that during the ten

months following, coworkers Katrina Lingenfelter and Ashley Scrivner filed false

workplace reports about her, she was passed over for promotion, and eventually she

was terminated by Reuter in October 2017.  Mayes brings this action against

Lingenfelter, Scrivner, Reuter, and the State of Missouri under 42 U.S.C. § 1983, the

Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 et seq., and Title VII of the

Civil Rights Act, 42 U.S.C. § 2000e, et seq. for political and racial discrimination and retaliation.

Now pending before me are motions to dismiss filed by all defendants, seeking dismissal under Rule 12(b)(6), Fed. R. Civ. P., of all counts against them. Because I find that Mayes's complaint contains insufficient factual support for most of its allegations, defendants' motions to dismiss will be granted, except as to the racial discrimination claims brought against the State of Missouri.[1]

## I.    **Background**

Plaintiff Rochelle Mayes began her employment as a Deputy Clerk with the Circuit Court in Jefferson County, Missouri in 2000. She was promoted to a level III Deputy Clerk and assigned to Judge Darrell Missey's courtroom in 2007. Mayes was the first African-American clerk to work at the court.

In November 2014, Republican Michael Reuter defeated Democrat Jeanette McKee for the elected position of Clerk of the Jefferson County Circuit Court.[2]

---

[1] Defendant State of Missouri seeks dismissal of Mayes's entire complaint, but its motion only includes arguments on why the retaliation counts brought against the State should be dismissed. There are sufficient facts alleged for Mayes's Title VII and MHRA racial discrimination claims against the State to survive dismissal under Federal Rule 12(b)(6).

[2] Jeanette McKee, along with Deputy Clerk Sharon Rebecca Hickman, are plaintiffs in a different lawsuit currently pending before this court against Reuter and another defendant. *See McKee v. Reuter*, No. 4:16 CV 207 CDP (E.D. Mo. filed Feb. 16, 2016). Nearly seven pages of Mayes's complaint contain the allegations and details of that other case. Mayes can only assert her own legal rights and interests, and cannot rely on the legal rights or interests of third parties in her claims

Democrat Mayes had publicly supported her coworker, Deputy Clerk McKee, in her failed campaign for Clerk of Court.

When Reuter took office in January 2015, Mayes was still working as the courtroom clerk for Judge Missey. Mayes alleges that she had a very good relationship with Judge Missey until September 2016 when Missey was elected to be the Presiding Judge of the court for the term starting January 1, 2017. Traditionally, when a judge was elected as Presiding Judge, his courtroom clerk would become the Secretary to the Presiding Judge and receive a $200 per month pay increase. However, after being elected, Judge Missey informed Mayes that he might move her to a different courtroom clerk position for another judge. But when the other judge requested to meet with Mayes about the position, Mayes refused because of a health problem she was experiencing at work that day.

On November 30, 2016, Judge Missey confronted Mayes about her refusal to meet with the other judge. At that meeting, Mayes told Missey that she believed he was replacing her as his courtroom clerk because she is African-American. Following the meeting, fellow Deputy Clerk and defendant, Ashley Scrivner, submitted a complaint about Mayes to Reuter. Although Scrivner was not in the meeting with Missey and Mayes, she claimed that she was nearby and had heard

_____

for relief. *U.S. Dept. of Labor v. Triplett*, 494 U.S. 715, 720 (1990). Only factual allegations specifically relating to plaintiff Mayes and the claims she raises in this suit are relevant here.

Mayes yelling and cursing at Judge Missey. Mayes denies raising her voice in the meeting and alleges Scrivner's report is false.

On December 1, 2016, the day after the meeting with Missey, Mayes was informed by Reuter and her supervisor that she had been removed as courtroom clerk for Judge Missey. She was reassigned to a pool of Deputy Clerks in the juvenile division. Mayes filed a grievance concerning her removal as courtroom clerk. Reuter denied the grievance based on a state law that permits judges to select their own courtroom clerks. Around the same time as the grievance denial, Reuter demoted Mayes from Deputy Clerk level III to level II, stating that she no longer qualified as level III because she was not a courtroom clerk. Mayes alleges that this is false.

Defendant Katrina Lingenfelter was appointed by Judge Missey as his new courtroom clerk and Secretary to the Presiding Judge. Mayes and Lingenfelter had a friendly relationship until Lingenfelter was appointed as Missey's courtroom clerk. Mayes alleges that Lingenfelter "is Caucasian, slim, blonde and younger than [Mayes], but is not as efficient, experienced or competent." ECF No. 1 at ¶ 77.

On December 26, 2016, Mayes filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Her charge was brought against Judge Missey and Reuter, claiming discrimination based on "1. OBESITY, 2.

DISABILITY - (OSETO-ARTHRITIS), 3. RACE & 4. AGE." ECF No. 1-1 at 3. In her letter to the EEOC, Mayes described the events leading up to her demotion from Missey's courtroom clerk and from a Deputy Clerk level III to II. On September 29, 2017, the EEOC issued her a right-to-sue letter.

On April 25, 2017, Mayes filed a complaint with the Missouri Commission on Human Rights (MCHR). On the charge document, she checked the boxes for discrimination based on race, retaliation, age, and disability. The MCHR charge contains the same narrative of facts as the EEOC charge, naming both Missey and Reuter. On November 20, 2017, the Missouri Commission issued Mayes a right-to-sue letter.

Between December 2016 and October 2017, Mayes continued to work at the court in the pool of juvenile division Deputy Clerks. She alleges that she was mostly ignored by her coworkers. Courtroom clerk and backup courtroom clerk positions opened up during this period, but Mayes was not considered for the positions and less-experienced clerks were appointed to them.

In August, September, and October 2017, Mayes alleges that Lingenfelter submitted three false reports about Mayes's workplace behavior. In two of the reports, Lingenfelter accused Mayes of calling her a "bitch." In the third report,

Lingenfelter claims Mayes hit the back of her knee with her lunchbox and then elbowed her in the back.  Two of these three false reports were submitted to Reuter.

On October 6, 2017, Reuter issued Mayes a notice of "Intent to Terminate" employment because of "recent actions taken by [Mayes] toward other coworkers as well as your supervisor."  Because Mayes's request for a pre-termination hearing was not postmarked by the effective date of the dismissal, Reuter issued a "Final Letter of Termination" on October 16, 2017.  Mayes's appeals of the termination to Judge Missey and the Circuit Court Budget Committee were denied.  There is no allegation that Mayes filed second charges with the EEOC or MCHR regarding her termination.[3]

Mayes's complaint seeks relief on seven counts: three 42 U.S.C. § 1983 counts for political discrimination, retaliation for political activity, and equal protection based on race; two Missouri Human Rights Act counts for racial discrimination and retaliation; and two Title VII counts for racial discrimination and retaliation.  All seven counts are brought against the three individual defendants: Lingenfelter, Scrivner, and Reuter.  The MHRA and Title VII counts are also brought against the State of Missouri.

---

[3] Despite Mayes's termination occurring after the filing of the EEOC and MCHR charges, defendants make no argument on her failure to file subsequent charges after the termination. Because no party has argued this, this Order does not examine Mayes's failure to exhaust administrative remedies as to her termination claim or any of her other claims arising after her charges with the EEOC or MCHR.

Defendants seek dismissal under Rule 12(b)(6), Fed. R. Civ. P., of all counts. Defendants argue Mayes has failed to exhaust her administrative remedies because the charges she filed did not encompass all the claims made in the lawsuit, failed to plead sufficient facts of their personal involvement, and failed to state sufficient allegations to support her claims for relief, including a conspiracy claim. Defendants also claim they are protected by qualified immunity, quasi-judicial immunity, and official immunity. Mayes concedes that the four MHRA and Title VII claims should be dismissed against defendants Lingenfelter and Scrivner, but she opposes dismissal of the other claims.

## II.    Motion to Dismiss Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. Fed. R. Civ. P. 12(b)(6). When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989). However, the court need not accept as true merely conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the plaintiff from the facts pled. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Rule 8(a)(2), Fed. R. Civ. P., provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570.

## III.   Counts I & II: §1983 Political Discrimination and Retaliation

For a public employee, §1983 "imposes liability for certain actions taken 'under color of' law that deprive a person 'of a right secured by the Constitution and laws of the United States.' " *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982)). A claim of political discrimination is based on an employee's status or affiliation, while a claim of political retaliation is based on her speech or conduct. *Wagner v. Jones*, 664 F.3d 259, 269 (8th Cir. 2011). The tests for each claim are similar in that both require a plaintiff to make a prima facie showing that she suffered an adverse employment action and that the plaintiff's political beliefs or affiliation (in a political discrimination claim), or activity (in a retaliation claim), was a substantial

8

or motivating factor in the employer's decision to take the adverse employment action. *Id.* at 270. Substantial or motivating factors can be shown through either direct or indirect evidence. *Id.* at 271.

Mayes alleges that the three individual defendants conspired together to discriminate against her based on her political affiliation as a Democrat and in retaliation for her support of Democrat McKee in the 2014 election for Clerk of Court. Mayes's complaint does not allege that Lingenfelter or Scrivner are politically adverse to Mayes, that they were aware that Mayes supported a Democrat in the 2014 election, or that they themselves did not also support Democrat McKee in that election. Mayes alleges that the political animosity started with the November 2014 election but she admits that she had a good relationship with Lingenfelter for the two years following the election, until Lingenfelter was appointed to replace her. Neither fellow Deputy Clerk Lingenfelter nor Scrivner had the authority or power to make any adverse employment decision affecting Mayes's employment. Her only factual accusations against Lingenfelter and Scrivner involve the filing of false reports. However, the complaint contains no facts that could support a finding that political affiliation or retaliation was a substantial or motivating factor in the filing of the false reports. The workplace reports simply indicate personal problems between

coworkers, especially in light of the fact that Mayes admits she also filed a report complaining about Lingenfelter. ECF No. 1-5.

Mayes alleges Reuter violated her rights because of her political affiliation and in political retaliation by taking the adverse actions of demoting her from Deputy Clerk level III to II, failing to re-promote her, and terminating her employment.[4] Mayes asserts that the loss of her courtroom clerk position should not have required a demotion to a Deputy Clerk level II position. She also claims Reuter used the false reports filed by coworkers Lingenfelter and Scrivner as a pretext for her termination. Again, the complaint contains no facts to support a finding that political affiliation or activity was a substantial or motivating factor in any of Reuter's adverse employment decisions. Although Mayes asserts that she was one of the "most avid and visible" supporters of McKee in the 2014 election, Reuter was not employed at the clerk's office at that time and there is no evidence to suggest that Mayes's support of McKee was visible to Reuter. ECF No. 1 at ¶ 18. Mayes alleges that Reuter used the false reports from her coworkers as pretext to terminate her, but she never alleges that Reuter knew the reports to be false. Likewise, there is no evidence that Reuter ever made any political comments to Mayes or gave preferential treatment to Republicans

---

[4] Mayes also alleges that Reuter failed to reappoint her to a courtroom clerk position. *See* ECF No. 1 at ¶ 107, 111, & 120. However, Mayes acknowledges that the selection of a courtroom clerk is made by the Judge that the clerk would work for, and therefore, Reuter would not have the authority to make such an appointment.

in the office.  *See Charleston v. McCarthy*, 175 F.Supp.3d 1115, 1125 (S.D. Iowa 2016) (discussing cases where causation was adequately plead for political discrimination claims).

In addition, almost three years passed between Reuter's November 2014 election and Mayes's October 2017 termination.  Just as close temporal proximity between a protected activity and an adverse employment action can contribute to establishing a case of retaliation, a lengthy time period between the activity and the adverse action can suggest no causal link.  *See Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 657 (8th Cir. 2007) (only a couple of months between protected activity and adverse employment action contributes to establishing retaliation); *Hudson v. Norris*, 227 F.3d 1047, 1051 (8th Cir. 2000) (four months between activity and action sufficient to infer causal link).

The complaint contains no factual allegations from which one could construe that any adverse employment action taken against Mayes was based on her status as a Democrat or her support of a Democratic candidate in the 2014 election.  Mayes's complaint states merely conclusory allegations regarding political discrimination and retaliation.  Counts I and II will be dismissed.

## IV.   Count 3: §1983 Equal Protection based on Race

The Equal Protection Clause of the Fourteenth Amendment requires that government entities treat similarly situated persons alike.  *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1014 (8th Cir. 2013) (citations omitted).  For any equal protection claim, the plaintiff must first demonstrate that she was treated differently than others who are similarly situated to her.  *Keevan v. Smith*, 100 F.3d 644, 648 (8th Cir. 1996).  Eventually, the plaintiff will also have to prove circumstances that support an inference of discrimination.  *Hager*, 735 F.3d at 1014.

In the third count of her complaint, Mayes claims that the three individual defendants discriminated against her on the basis of her race as an African-American by demoting her, refusing to re-promote her, filing false reports about her, and terminating her employment.  However, the only factual allegation in the complaint that could be construed as discriminatory treatment is that between December 2016 and October 2017, while Mayes was working as a Deputy Clerk II in the pool of juvenile division clerks:

> a number of positions opened up for Courtroom Clerks and for backup Courtroom Clerks.  On each occasion neither Reuter nor any of the Judges even considered [Mayes] for appointment as a Courtroom Clerk or backup Courtroom Clerk.  Instead, less experienced Deputy Clerks were appointed to those positions.

ECF No. 1 at ¶ 82.

Mayes asserts that she was treated differently than other employees applying for courtroom clerk positions. However, there are no allegations that the employees who were appointed were similarly situated to Mayes in terms of experience or workplace performance. Also, Mayes acknowledges in her complaint that appointment to these positions is at the discretion of the judge for which the courtroom clerk would serve. Because none of the three individual defendants are judges, they cannot be responsible for Mayes not getting appointed.

Mayes concludes that she was the victim of false reports, demoted, passed over for promotion, and terminated because of her race; but this legal conclusion lacks factual support. Mayes fails to identify any other similarly situated employee who was treated differently. She fails to state any facts that suggest defendants had a discriminatory intent. There are no facts alleged to show that Lingenfelter and Scrivner filed false reports about Mayes because of her race. Nor are there any facts from which one could infer that Reuter considered her race in his employment decisions. For this § 1983 equal protection claim Mayes merely makes the conclusory statement that she received poor treatment from the defendants because of her race, with no factual support. Count III will be dismissed.

## V.    General Conspiracy Claim

Although the complaint lists no specific conspiracy count, it contains multiple references to the individual defendants "acting in concert."  Mayes argues in her brief to the court that her complaint alleges sufficient facts to establish a conspiracy between defendants to deprive her of her constitutional rights.  *See* ECF No. 1 at ¶¶ 103, 110, & 116; ECF No. 20 at 13.

A complaint setting forth only vague, conclusory, or general allegations that the defendants engaged in a conspiracy cannot withstand a Rule 12(b)(6) motion to dismiss.  *See Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988).  A plaintiff must allege with "sufficient particularity" and demonstrate with "specific material facts" that the parties reached some agreement and conspired together to deprive plaintiff of a federal right.  *Id.* (quoting *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982)).

There are absolutely no facts plead with particularity in Mayes's complaint demonstrating that Lingenfelter, Scrivner, and Reuter conspired against her.  There are fifty-three Deputy Clerks at the court, yet Mayes does not allege that Lingenfelter and Scrivner even knew each other.  There is no evidence that Lingenfelter and Scrivner were aware that they had both filed reports about Mayes's workplace behavior.  In fact, the lengthy period of time between the filing of the false reports –

14

Scrivner's report was filed in November 2016 and Lingenfelter's first report was filed in August 2017 – suggests that Lingenfelter and Scrivner were not acting in concert. Mayes does not allege that Reuter even knew the reports from Lingenfelter and Scrivner were false. Nothing in the complaint indicates any mutual understanding or meeting of the minds between Lingenfelter, Scrivner, and Reuter as to intent to deprive Mayes of her employment. Any conspiracy claim that Mayes attempts to plead in her complaint does not survive dismissal under Federal Rule 12(b)(6).

## VI.  Counts IV through VII: MHRA and Title VII Liability

### A. Failure to Exhaust Administrative Remedies[5]

Reuter argues that Mayes has failed to exhaust administrative remedies for her four racial discrimination and retaliation claims brought under the Missouri Human Rights Act and Title VII against him. The State of Missouri only argues failure to exhaust as to the retaliation claim brought against it under Title VII.[6]

The Missouri Human Rights Act makes it unlawful for employers to discriminate on certain bases, including race. Mo. Rev. Stat. § 213.010 et seq. To

_____

[5] Defendants also argue that Mayes's § 1983 claims in Counts I, II, and III should be dismissed for failure to exhaust administrative remedies. Mayes is correct that she need not exhaust state remedies before bringing her claims under § 1983. *See Charleston v. McCarthy*, 175 F.Supp.3d 1115, 1120 (S.D. Iowa 2016) (stating the "general rule" that "a plaintiff need not exhaust state remedies before bringing an action under § 1983" except for limited procedural due process claims).

[6] Mayes concedes in her response brief that counts IV, V, VI, and VII, for racial discrimination and retaliation under the MHRA and Title VII, should be dismissed as to defendants Lingenfelter and Scrivner. *See* ECF No. 20 at 21.

pursue a claim under the MHRA, the statute requires that any person claiming to be aggrieved by an unlawful discriminatory practice must file a charge of discrimination stating the name and address of the person alleged to have committed the unlawful discriminatory practice and setting forth the particulars thereof. Mo. Rev. Stat. § 213.075(1). In addition, a "claimant must exhaust administrative remedies by timely filing an administrative complaint and either adjudicating the claim through the MCHR or obtaining a right-to-sue letter." *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994). The exhaustion requirement provides notice of all claims of discrimination. Claims should be interpreted liberally, such that administrative remedies are deemed exhausted as to all incidents of discrimination that are "like or reasonably related to the allegations of the [administrative] charge." *Id.* (quoting *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986) (alteration in original)).

Title VII of the Civil Rights Act imposes liability on an employer who engages in certain discriminatory practices, including discrimination based on race. 42 U.S.C. § 2000e-2(a). Under Title VII, an aggrieved party must file a timely charge of discrimination with the EEOC before she is permitted to bring suit in federal court. 42 U.S.C. § 2000e-5(b), (c), (e). Similar to a MHCR charge, "[t]he permissible scope of an EEOC lawsuit is not confined to the specific allegations in the charge; rather, it may extend to any discrimination like or related to the substance of the allegations in

the charge and which reasonably can be expected to grow out of the investigation triggered by the charge." *E.E.O.C. v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir. 1992). However, each discrete act of alleged discrimination is a different unlawful employment practice for which a separate charge is required. *Richter v. Advance Auto Parts, Inc*., 686 F.3d 847, 851 (8th Cir. 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)). Entirely new allegations that appear for the first time in the federal-court complaint should be dismissed for failure to exhaust administrative remedies if the EEOC charge did not provide notice that they would be raised. *Id.* at 850-53.

### Counts IV & VI: Racial Discrimination Claims

In Count IV of the complaint brought for racial discrimination under the MHRA, Mayes asserts that she was discriminated against because of her race "by demoting her, by failing to re-promote her to a Level III Clerk, by failing to appoint her as a Courtroom Clerk, and by using false pretextual statements against her to provide grounds for terminating her, and by then terminating her employment as a Deputy Clerk." ECF No. 1 at ¶ 125. In Count VI of the complaint brought for racial discrimination under Title VII, Mayes asserts defendants treated other clerks who are not African-American more favorably "by promoting … Caucasian clerks who had less experience and who were less qualified than [Mayes]." ECF No. 1 at ¶ 137.

The EEOC and MCHR charges provide sufficient particulars involving Reuter to put him on notice and to constitute exhaustion of Mayes's racial discrimination claim. Both charges specifically name Reuter and racial discrimination. Although at the time of filing of the EEOC charge Mayes had only recently been demoted, the particulars provide the basis for racial discriminatory employer practices by Reuter that are like or related to the substance of the allegations in the complaint relating to her demotion, and could reasonably be expected to grow out of an investigation triggered by the charge.

*Counts V & VII: Retaliation Claims*

In Counts V and VII of the complaint for retaliation under the MHRA and Title VII, Mayes alleges defendants retaliated against her "because she filed a grievance relating to her removal as the Courtroom Clerk for Judge Missey, because she filed a complaint with the Equal Employment Opportunity Commission and because she filed a complaint with the Missouri Human Rights Commission." ECF No. 1 at ¶¶ 130, 143. She alleges that they took the following adverse employment actions in retaliation: "failing to reappoint her as a Courtroom Clerk, by demoting her from a Level III to a Level II Deputy Clerk and then refusing to re-promote her and by terminating her employment." *Id.* Mayes's December 2016 and April 2017 EEOC and MCHR charges state that she filed a grievance against Judge Missey, that Reuter

rejected the grievance upon the direction of Judge Missey, and that Judge Missey was

mad about the grievance filing so he instructed Reuter to demote Mayes from Deputy

Clerk III to Deputy Clerk II.  ECF Nos. 1-1 at 2, 1-2 at 2.  There are sufficient

particulars in the charge documents to exhaust administrative remedies as to a claim

that the State and Reuter retaliated against her for filing the grievance against

Missey.[7]

     Retaliation claims arising from a charge filed with the EEOC or the MCHR

must also meet statutory exhaustion requirements – meaning a second charge alleging

retaliation based on the filing of the first charge must also be filed.  *Richter*, 686 F.3d

at 851, 854.  In this case, there is no evidence before me that Mayes filed a second

EEOC or MCHR charge alleging that her termination was in retaliation for the filing

of the first charges.  However, no defendant has made this argument and it is

unnecessary to decide because Mayes's retaliation claims fail on other grounds.

---

[7] Mayes could not have exhausted the termination claim in the EEOC and MCHR charges that she
filed because she had not yet been terminated when she filed the charges.  But, again, since
defendants did not make this argument, it will not be addressed here.

## B. Sufficiency of the factual allegations

*Counts IV & VI: Racial Discrimination Claims* [8]

Reuter argues that Mayes's racial discrimination claims, brought under both the MHRA and Title VII, should be dismissed against him because she fails to allege any facts sufficient to create an inference that Reuter took any action against her based on her race. I agree. Just as Mayes's claim of equal protection based on race lacks any factual support, so do these claims.

Under the MHRA, a case of racial discrimination in the employment context requires a plaintiff to demonstrate that race was a contributing factor in her employer's decision. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819-20 (Mo. banc 2007) (citing Mo. Rev. Stat. § 213.010(5) (1998)).[9] Under Title VII, an

_____

[8] The State of Missouri seeks dismissal of all four claims brought against it but makes no argument in support of the dismissal of the racial discrimination claims, only mentioning race as something Mayes did not complain to her supervisors or anyone other than Judge Missey about.

[9] Effective August 28, 2017, provisions of the MHRA were amended. The parties mention the amendments of the MHRA but do not affirmatively state which version of the MHRA should apply here. This case was filed after the amendments in December 2017, but many of the allegations of the complaint involve events that occurred before the amendments. Recent Missouri cases have held that the MHRA amendments do not apply retrospectively. *See Hurley v. Vendtech-SGI, LLC*, No. 16-01222-CV-W-ODS, 2018 WL 736057, at *3-4 (W.D. Mo. Feb. 6, 2018) (agreeing with most Missouri courts that have considered the issue and found no retrospective application of the new MHRA causation standard for a case filed in November 2016); *Woodruff v. Jefferson City Area Young Men's Christian Ass'n*, No. 17-4244-CV-C-WJE, 2018 WL 576857, at *3 (W.D. Mo. Jan. 27, 2018) (finding that the change in MHRA definition of "employer" involves a substantive right and cannot apply retroactively to a case filed October 2017 but involving an employee terminated in July 2016).

One of the August 2017 amendments changes the MHRA causation standard from "contributing factor" to "motivating factor." *Hurley*, 2018 WL 736057, at *3 (citing Mo. Rev. Stat. §§ 213.101.4,

unlawful employment practice requires a plaintiff to demonstrate that race was "a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

Mayes's complaint contains no factual allegations to support either of these causation standards. Mayes points to no direct or circumstantial evidence that race was a contributing or motivating factor in Reuter's adverse employment actions. Mayes is the only African-American Deputy Clerk at the court, but that alone is not enough to support an accusation of racial discrimination. She states that Lingenfelter, who replaced her as courtroom clerk for Judge Missey, is Caucasian and had less experience in the Clerk's office than Mayes. However, there is no allegation that Reuter participated in the decision to appoint Lingenfelter as Missey's courtroom clerk. Mayes names no similarly situated employee who was treated differently by Reuter. The complaint simply does not contain any factual allegations, that when accepted as true, state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570. Counts IV and VI will be dismissed as to defendant Reuter.

*Counts V & VII: Retaliation Claims*

---

213.111.5, 213.010(2) (2017)). The contributing factor standard is less rigorous than the motivating factor standard, which is applied in Title VII discrimination cases. *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1033 (8th Cir. 2016).

In light of the Missouri cases prohibiting retrospective application and because the new causation standard is the same as the Title VII standard, the court will use the pre-Amendment version of the MHRA here; Mayes's claims fail under both standards.

Reuter and the State of Missouri both argue that Mayes fails to allege sufficient facts to support her MHRA and Title VII retaliation claims against them. To establish a prima facie case of retaliation under the MHRA, Mayes must demonstrate that she complained of discrimination, that her employer took adverse action against her, and that a causal relationship existed between her complaint and the adverse action. *See McCrainey v. Kansas City Mo. Sch. Dist.*, 337 S.W.3d 746, 753 (Mo. Ct. App. 2011). Similarly, for a prima facie case of Title VII retaliation, Mayes must demonstrate that she engaged in protected conduct, she suffered a materially adverse employment action, and the adverse action was causally linked to the protected conduct. *Id.* at n.3.

Mayes has not provided the court with a copy of the grievance she filed after her removal as courtroom clerk or Reuter's written response to her grievance. *See* ECF No. 1 at ¶¶ 70-71. Although Mayes alleges that she directly accused Judge Missey of racial discrimination, [10] there is no allegation that Reuter was himself aware of her complaint of racial discrimination. There are also no allegations that Reuter was aware of Mayes's EEOC and MCHR charges. Even construing the complaint allegations in Mayes's favor and assuming Reuter was aware of Mayes's

_____

[10] Mayes only verbally expressed her allegation of racial discrimination to Judge Missey:
 During the meeting with Judge Missey on about November 30, 2016, [Mayes] responded that she believed Judge Missey was replacing her as his Courtroom Clerk, and therefore as Secretary to the Presiding Judge, because she is black.
 ECF No. 1 at ¶ 68.

protests of racial discrimination, there are no facts to support a causal link between Mayes's three filings and any adverse employment action taken against her. Mayes points to no references, comments, or complaints by Reuter that suggest that her accusations of discrimination were considered in his decisions to demote her from level III to level II clerk, his failure to re-promote her, or his termination of her employment. Her grievance and EEOC charge were filed in December 2016. Her MCHR charge was filed in April 2017. She was terminated in October 2017. The lengthy period between complaints and termination diminishes the possible inference of casual nexus. *See Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1036-37 (8th Cir. 2016) (weakens inference of retaliation when more than seven weeks passed between complaint and termination); *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 760 (8th Cir. 2015) (weakens causal link for retaliation where almost one year passed between complaints and termination). There are no facts to support an inference that Mayes's complaints about discrimination affected Reuter's employment decisions.

As for the allegation of failure to reappoint or re-promote Mayes to a courtroom clerk position (which can only be directed at the State because it has been established that Reuter did not have the authority to make such an appointment), Mayes provides no facts of a causal link to any of her filings alleging discrimination. Mayes names no specific courtroom clerk opening that she was not considered for by

an appointing Judge because of her grievance or statutory charges. She does not even allege that the other Judges of the court were aware of the filings. There are no facts to support a retaliation claim against Reuter or the State of Missouri. Counts V and VII will be dismissed.

## VII. <u>Conclusion</u>

Assuming the allegations of the complaint are true and construing them in the light most favorable to Mayes – as I must on a motion to dismiss – there is simply no factual basis for the legal conclusions that defendants Lingenfelter, Scrivner, or Reuter discriminated or took adverse employment actions against Mayes based on her political affiliation, in retaliation for her support of a Democratic candidate, in retaliation for her complaints of discrimination, or because of her race. Nor are there sufficient factual allegations plead with particularity to indicate a meeting of the minds of the three individual defendants, as required for a conspiracy claim. Defendants Lingenfelter, Scrivner, and Reuter's motions to dismiss are granted and they are dismissed from this case. Defendant State of Missouri's motion to dismiss will be granted in part. Mayes's Title VII and MHRA retaliation claims against the State are dismissed for failure to state a claim but her statutory racial discrimination claims remain.[11]

---

[11] Mayes's response in opposition to defendants' motions to dismiss alternatively requests leave to file an amended complaint "to correct any deficiencies, if any, that are correctable." ECF No. 20 at

Based on the foregoing,

**IT IS HEREBY ORDERED** that defendants Katrina Lingenfelter and Ashley Scrivner's Motion to Dismiss [#8] is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant Michael Reuter's Motion to Dismiss [#11] is **GRANTED**.

**IT IS FINALLY ORDERED** that defendant State of Missouri's Motion to Dismiss [#16] is **GRANTED as to Counts V and VII.** The only remaining claims in this case are Counts IV and VI against defendant State of Missouri.

This case will be set for a Rule 16 Scheduling Conference by separate order.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 17th day of May, 2018.

---

27. Although the court recognizes its duty to freely grant leave to amend when justice so requires, Fed. R. Civ. P. 15(a)(2), there is no evidence here to indicate that Mayes's complaint can be cured of its factual deficiencies with an amended filing.  Leave to amend will not be granted.